# Buehler, Appellant, *v.* Union Traction Company.

*Negligence—Street railway companies—Neglect of motorman.*

Where the motorman of an electric car is warned that the wall of a building in course of demolition is about to fall against a pile of bricks close to the track ahead of his car, and the evidence shows that he saw and heard, or that he must have seen and heard a person calling him to stop, and that the warning was given him in time to enable him to stop his car, but he did not stop and the falling wall forced some of the bricks into the car injuring a passenger, the railway company is liable to the passenger for the injury sustained.

Argued March 29, 1901.    Appeal, No. 4, Jan. T., 1901, by plaintiff, from order of C. P. No. 1, Phila. Co., June T., 1897, No. 232, refusing to take off nonsuit in case of Katharine R. Buehler v. Union Traction Company.    Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ.    Reversed.

Trespass for personal injuries.    Before BIDDLE, P. J.

The facts are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit, which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Eugene Raymond,* for appellant.—A carrier of passengers, when approaching a dangerous place, is bound to use the highest degree of care and prudence, the utmost skill and foresight: Thane v. Scranton Traction Co., 191 Pa. 249; Smedley v. Hestonville, etc., Pass. Ry. Co., 184 Pa. 620; Fredericks v.

Northern Central R. R. Co., 157 Pa. 103; Walling v. Germantown Pass. Ry. Co., 97 Pa. 55–58; Weiller v. People's Pass. Ry. Co., 17 W. N. C. 306.

*Thomas Leaming*, with him *Russell Duane*, for appellee.— There was no notice of an unheard of danger from an outside source, and hence no evidence of negligence : Phillips v. People's Passenger Ry. Co., 190 Pa. 222.

There is no presumption of negligence to supply the lack of proof : Federal Street, etc., Ry. Co. v. Gibson, 96 Pa. 83; Hayman v. Penna. R. R. Co., 118 Pa. 508; Penna. R. R. Co. v. MacKinney, 124 Pa. 462; Thomas v. Phila. & Reading R. R. Co., 148 Pa. 180 ; Fleming v. Pittsburg, etc., Ry. Co., 158 Pa. 130.

OPINION BY MR. JUSTICE BROWN, July 17, 1901 :

Instead of that high degree of care which should at all times be exercised by a motorman in charge of a trolley car, there was an absence of even ordinary care and caution by the one on the car of the defendant below at the time the plaintiff was injured.

The car was going down South Twelfth street, in the city of Philadelphia, on the afternoon of June 4, 1897. At the southwest corner of Twelfth and Walnut streets the bricks taken from a building that was being torn down had been placed in the former street, between the west rail of appellee's track and the curb. This pile of bricks, according to one witness, was two feet and six inches from the track, and, according to another, three feet and six inches. It was eight or ten feet wide, about eight feet high and twenty feet long. Its exact dimensions, however, are unimportant. The north end of it was twelve or sixteen feet from the south crossing on Walnut street. A portion of the wall of the old structure, about eight feet high from the first floor, or eleven feet in height from the pavement, was about to be torn down when the car on which the plaintiff was riding was seen approaching from the north, in the vicinity of Sansom street. The wall was then trembling, according to the testimony of John Elliott, and he ran out to the middle of the track on Twelfth street at its intersection with the south crossing on Walnut, and, holding up his hands, called to the motorman to stop. Disregarding this warning, given

when the car was still north of Walnut street, the motorman went on until his car was alongside the pile of bricks, when the wall of the house, falling against them on the west side, forced some of them into the car, causing the injuries complained of by appellant.

It is true that the mere forcing of the bricks into the car by the falling wall would not in itself raise any presumption of negligence on the part of the company, for there was no privity between it and the contractor who was tearing the building down, and the injury to the plaintiff resulted from no defective track, car, machinery, motive power, nor from anything under the direct control of the company : Federal Street and Pleasant Valley Railway Co. v. Gibson, 96 Pa. 83; Hayman v. Penna. R. R. Co., 118 Pa. 508, and Penna. R. R. Co. v. MacKinney, 124 Pa. 462. But the injury was the result of the carelessness of the company's employee in disregarding the timely warning of danger into which he took his car with its load of passengers. His duty was at all times to be on the alert, looking ahead of him for any sudden or unexpected danger, and this was especially true when he was about to pass the point where private improvements had, to some extent, at least, temporarily obstructed the street. If he had been so on the alert, and, with no warning given him of unseen impending danger, had gone on, and the bricks had suddenly and unexpectedly fallen into the car, there would not, we repeat, be a presumption of negligence against the company. It is not, however, for injuries resulting from any sudden or unexpected danger, caused by the independent conduct of another, into which the car ran, that the appellant insists upon the company's liability to pay ; her contention is that the injury that came to her would have been avoided but for the negligence on the part of the company's employee in refusing to heed the warning, which had been given him in time by those who were in a position to give it, of the peril that confronted him and his carload of passengers. It offends against reason to say that, under such a state of facts, there was no negligence on the part of the company's employee for which it is now answerable.

Phillips v. People's Passenger Railway Co., 190 Pa. 222, seems. to have been relied on by counsel for appellee in support

of the motion for a nonsuit in the court below, and is pressed
upon our attention as authority for not disturbing the judg-
ment. In that case, a runaway horse, dashing eastward on
Walnut street, ran into a car going south on Fourth street, as
it was about to cross Walnut, and our Brother FELL, in ex-
pressing the judgment of the court, that the rider could not re-
cover for the injuries which resulted from his collision with
the car, said : " We are unable to see in this testimony any
evidence of negligence on the part of the motorman. There is
no evidence that he heard the plaintiff call to him or that he
was otherwise made aware of the approach of the runaway
horse. It was his duty, undoubtedly, to look for approaching
cars and other vehicles which might collide with his car ; but
anything moving with the speed of a runaway horse was not to
be apprehended, and he might very well have assured himself
that none of the ordinary dangers of street crossings threatened
him without having either heard or seen the approach of the
plaintiff. He had not brought his car to a full stop at the
crossing, nor was there, as far as the testimony shows, any
reason why he should. A motorman certainly cannot be re-
quired to stop at every crossing and look for such extraordinary
perils as the one in this case, nor can he be required to stop at
all unless the circumstances are such that it would be impru-
dent for him to do otherwise. In this case, it being Sunday
and the streets consequently comparatively clear of travel, and
there being nothing on Walnut street which, if moving at a
reasonable rate of speed, would have collided with him, a full
stop would have been entirely uncalled for. But even assum-
ing that he knew the situation perfectly, it cannot be said that
he was bound upon being confronted by so sudden and imme-
diate a danger to do what after mature deliberation would have
seemed to a prudent man to be the wisest thing under the cir-
cumstances. Where the sole basis of liability is the omission
to perform a certain duty suddenly and unexpectedly arising,
there must be not only a consciousness of the facts which raise
the duty on the part of the person who is charged with its per-
formance, but also a reasonable opportunity to perform it :
Hestonville, etc., R. R. Co. v. Kelley, 102 Pa. 115."

In the case now before us, there was negligence on the part

of the motorman in rushing into danger with his car after he had received timely warning that it was in front of him.

There is evidence that he saw and heard, or that he must have seen and heard, Elliott calling upon him to stop, and that the warning was given him in time to enable him to stop his car. The danger against which he was warned was in front of him, where he was bound to be constantly on the outlook for it, and especially under the condition of the street to which we have already referred. But he saw fit, in the face of this warning, to exercise his own judgment and go on, instead of stopping his car and waiting for the danger to pass by before proceeding on his way, as ordinary care and prudence should have prompted him. It is certainly not needful that we should further distinguish between the case referred to and the one as presented by this plaintiff, which was clearly for the jury.

The judgment is reversed and procedendo awarded.